**OBSTETRICAL AND GYNECO-LOGICAL ASSOCIATES, P.A., Appellant,**

v.

**Andre McCOY, Individually and as Permanent Guardian of Shannon Miles McCoy, An Incapacitated Person, Appellee.**

No. 14–08–00762–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 9, 2009.

Barbara Hilburn, Elizabeth A. Kaufman, Houston, Diana L. Faust, R. Brent Cooper, Dallas, for Appellant.

Alexander Klein, III, Joseph Todd Trombley, Houston, for Appellee.

Panel consists of Justices BROWN, BOYCE, and SULLIVAN.

## OPINION

JEFFREY V. BROWN, Justice.

In this accelerated, interlocutory appeal, Obstetrical and Gynecological Associates, P.A., ("OGA") contends that the trial court abused its discretion by denying OGA's motion to dismiss under Chapter 74 of the Texas Civil Practice and Remedies Code, because the appellee failed to serve an expert report specifically addressing OGA's conduct. OGA contends that an expert report addressing OGA's conduct was required because the appellee alleged not only that OGA was vicariously liable for the conduct of others, but also that OGA was directly liable for health care liability claims. For the reasons explained below, we disagree and affirm the trial court's judgment.

### Background

In September 2004, Shannon Miles McCoy was admitted to Woman's Hospital of Texas to give birth to her first child. There, she was treated by obstetricians Mark A. Jacobs, M.D., and Debra Clark

Gunn, M.D., both employees of OGA. Shannon experienced complications and ultimately suffered serious injuries.

In 2006, appellee Andre McCoy, individually and as permanent guardian of Shannon Miles McCoy, brought this lawsuit against OGA, Dr. Jacobs, Dr. Gunn, and others, for alleged medical negligence in the care and treatment rendered to Shannon. In the lawsuit, McCoy alleged that OGA was vicariously liable for the conduct of Drs. Jacobs and Gunn under the doctrine of respondeat superior and as provided in the Texas Professional Association Act. McCoy also served four separate expert reports prepared by Molly Brewer, M.D. Dr. Brewer prepared one expert report for each of the originally named defendants, except for OGA. None of the expert reports specifically addressed OGA's conduct. OGA did not file any objections to Dr. Brewer's reports.

In January 2008, McCoy filed a third amended petition that included additional allegations of liability against OGA. McCoy alleged that OGA and Drs. Jacobs and Gunn were grossly negligent, that Drs. Jacobs and Gunn were vice-principals of OGA, and that OGA "authorized and/or ratified" the conduct of Drs. Jacobs and Gunn. McCoy further alleged that Drs. Jacobs and Gunn were acting in the course and scope of their employment at the time they cared for Shannon Miles McCoy in September 2004.

On February 22, 2008, OGA filed a motion to dismiss asserting that McCoy failed to timely serve an expert report as required by Chapter 74 of the Texas Civil Practice and Remedies Code. McCoy's response to the motion included, among other things, the representation that "no direct negligence claim has been advanced against Defendant OGA and Plaintiffs have only alleged vicarious liability against Defendant OGA." Therefore, McCoy assert-ed, it was not necessary to mention OGA by name in the expert reports concerning Drs. Jacobs and Gunn, because OGA, as the doctors' employer, was sufficiently implicated in those reports.

The trial court initially granted OGA's motion to dismiss. McCoy then filed a motion for reconsideration, and on July 25, 2008, the trial court granted the motion for reconsideration and denied OGA's motion to dismiss. This interlocutory appeal followed.

## I. McCoy's Challenge to Jurisdiction

■ Before reaching the merits of OGA's appeal, we must first address McCoy's assertion that this court lacks jurisdiction to hear OGA's appeal because the trial court granted a request for a thirty-day extension. Specifically, McCoy contends that he included in his motion for reconsideration a request for a thirty-day extension to cure any alleged deficiencies in his expert reports as provided under section 74.351(c). *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c) (Vernon Supp. 2008) (providing that the trial court may grant one thirty-day extension to the claimant to cure deficiencies in an expert report). Because the trial court granted the motion for reconsideration, McCoy argues, it granted this requested relief and therefore its order is not appealable. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon 2008) (permitting interlocutory appeal of order that denies relief sought under section 74.351(b), "except that an appeal may not be taken from an order granting an extension under [s]ection 74.351"); *Ogletree v. Matthews,* 262 S.W.3d 316, 321 (Tex.2007) (holding that if a deficient report is served and the trial court grants a thirty-day extension, that decision is not subject to appellate review even if it is coupled with a motion to dismiss).

We disagree that we have no jurisdiction over this appeal. First, and most important, the trial court's order does not grant any extension of time to McCoy. Second, McCoy requested the relief of an extension alternatively if the trial court found that Dr. Brewer's expert reports were deficient. During the hearing on the motion for reconsideration, the trial court indicated that it did not believe a report as to OGA was necessary, and that is why it denied OGA's motion to dismiss. Nothing in the record indicates that the trial court found Dr. Brewer's expert reports to be deficient. Therefore, the trial court did not need to reach McCoy's alternative request for an extension of time to cure deficient expert reports. Accordingly, because the trial court did not grant any extension of time to cure deficiencies under section 74.351(c), this court has jurisdiction over OGA's interlocutory appeal. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9).

## II. Did the Trial Court Err in Denying OGA's Motion to Dismiss?

OGA contends that the trial court abused its discretion in denying its motion to dismiss, because McCoy's expert reports wholly failed to implicate OGA. OGA asserts that the plain language of section 74.351 requires an expert report addressing each health care provider sued, and it is undisputed that OGA is a health care provider within chapter 74. Therefore, OGA maintains, all of McCoy's claims against it, including both the vicarious and the direct-liability claims, should have been dismissed. At a minimum, however, OGA argues that the direct-liability claims alleged in McCoy's third amended petition must be dismissed for McCoy's failure to provide an expert report specifically addressing OGA's conduct.

In response, McCoy claims that OGA has waived all of its objections to Dr. Brewer's reports because OGA did not timely file its objections. Additionally, McCoy argues that Dr. Brewer's reports criticizing the conduct of Drs. Jacobs and Gunn sufficiently implicated OGA because the doctors are OGA's employees, OGA is specifically identified as Dr. Gunn's employer in the reports, and OGA is vicariously liable for the negligence of its physician employees. Finally, McCoy asserts that the only claims made against OGA are based on vicarious responsibility for the doctors' conduct, not direct liability based on OGA's negligence.

### A. Standard of Review

When a trial court rules on a defendant health care provider's motion to dismiss a health care liability claim, we review the ruling for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex.2001); *Rittmer v. Garza,* 65 S.W.3d 718, 721 (Tex.App.-Houston [14th Dist.] 2001, no pet.). An abuse of discretion occurs when the trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003). A trial court will be deemed to have acted arbitrarily and unreasonably if the trial court could have reached only one decision, yet reached a different one. *Teixeira v. Hall,* 107 S.W.3d 805, 807 (Tex.App.-Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co., L.P.,* 226 S.W.3d 400, 403 (Tex.2007) (citing *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.2003)). To the extent resolution of the issue presented requires interpretation of the statute, we review the ruling under a de novo standard. *See*

*Buck v. Blum,* 130 S.W.3d 285, 290 (Tex. App.-Houston [14th Dist.] 2004, no pet).

**B. The Expert Report Requirement**

Under former section 74.351(a) of the Civil Practice and Remedies Code, a claimant in a health care liability claim was required to serve on each party or the party's attorney, not later than the 120th day after the date the claim was filed, one or more expert reports, with the curriculum vitae of each expert listed in the report. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a)).[1] Each physician or health care provider sued must be addressed in an expert report. *Id.* Within chapter 74, a professional association is considered a "health care provider." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(12) (Vernon 2005).

■ Failure to timely serve an expert report as to a particular defendant results in the trial court's dismissal of the claims against that defendant with prejudice, along with the award of reasonable attorney's fees and court costs to the defendant. *Id.* § 74.351(b). In fact, if the plaintiff does not timely serve an expert report as to a particular defendant, the trial court has no discretion to do anything other than dismiss the case with prejudice. *See id.; Estate of Regis ex rel. McWashington v. Harris County Hosp. Dist.,* 208 S.W.3d 64, 67–68 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

■ Under section 74.351(r)(6), an expert report is defined as a written report by an expert that provides a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem.Code § 74.351(r)(6); *Patel v. Williams ex rel. Estate of Mitchell,* 237 S.W.3d 901, 904 (Tex.App.-Houston [14th Dist.] 2007, no pet.). An expert report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of these statutorily required elements. *Palacios,* 46 S.W.3d at 878.

With this in mind, we now turn to our analysis of OGA's issue.

**C. Analysis**

**1. Waiver**

As a threshold matter, we must address McCoy's claim that OGA waived all of its objections to Dr. Brewer's reports. McCoy points out that a defendant whose conduct is "implicated" in an expert report must file and serve any objection to the sufficiency of the expert report not later than the twenty-first day after the date the report is served, or all objections are waived. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem.Code Ann.

---

1. The current version of section 74.351(a) requires that a claimant serve an expert report in a health care liability claim not later than the 120th day after the date that "the original petition is filed." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). However, the current version does not apply to this case, because McCoy's cause of action accrued before the effective date of the amendment. *See* Act of May 18, 2005, 79th Leg., ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590 (providing that 2005 amendment of section 74.351(a) applies only to causes of action that accrued on or after the amendment's effective date of September 1, 2005). We will refer to the applicable version as "former section 74.351(a)."

§ 74.351(a) (Vernon Supp.2008)). McCoy asserts that OGA did not object to the timeliness or sufficiency of Dr. Brewer's reports until February 22, 2008, about one year and seven months after the twenty-one day deadline.

According to McCoy, OGA's conduct was sufficiently implicated to trigger the duty to object to the sufficiency of the expert reports because Dr. Brewer's reports addressed the conduct of OGA's employees, Drs. Jacobs and Gunn, the reports identified Dr. Gunn as OGA's employee, and McCoy's original petition alleged that OGA was vicariously liable for the conduct of Jacobs and Gunn under the doctrine of respondeat superior and the requirements of the Texas Professional Association Act. *See Troeger v. Myklebust,* 274 S.W.3d 104, 110 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (rejecting claim that conduct of dentist, who was sole defendant, was not implicated because her name was omitted from expert report and holding that dentist waived challenges to expert report by failing to raise objections within twenty-one days after service); *Univ. of Tex. Sw. Med. Ctr. v. Dale,* 188 S.W.3d 877, 879 (Tex.App.-Dallas 2006, no pet) (holding that medical center was not required to be named in expert report addressing its residents' conduct because plaintiffs alleged no direct-liability claims against it and noting that medical center was implicated in report and so waived all its objections when it failed to object to sufficiency of report within twenty-one days after service).

In response, OGA disputes that its conduct was implicated by Dr. Brewer's reports; OGA also argues that it was under no duty to file objections to the reports within twenty-one days after service of the reports because McCoy failed to serve an expert report addressing OGA's conduct. *See Poland v. Grigore,* 249 S.W.3d 607, 616 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (holding that a complaint that a report was not timely served was not subject to the twenty-one day deadline to object to the sufficiency of a report under former section 74.351(a)). Further, OGA asserts that McCoy's reliance on *Dale* is misplaced. In *Dale,* the court held that the expert report, which addressed only the negligence of the medical center's residents, was not required to mention the medical center by name because the plaintiffs were not alleging that the defendant medical center was directly negligent. *See Dale,* 188 S.W.3d at 879. Here, OGA complains, McCoy has alleged direct liability against it, pointing to McCoy's allegations of liability based on the Texas Professional Association Act, gross negligence, and vice-principal theories. Therefore, OGA contends, McCoy was required to provide an expert report specifically addressing the conduct for which OGA was allegedly directly liable.

Our supreme court has recently considered the question whether a defendant who is alleged to be vicariously liable for the conduct of another is sufficiently implicated in an expert report when it is not named in the report and its conduct is not directly addressed. *See Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669 (Tex.2008) (per curiam). In that case, the Gardners brought a health care liability suit against Dr. Berney Keszler, who performed a lumbar-epidural procedure on Craig Gardner, and U.S. Imaging, Inc., d/b/a SADI Pain Management ("SADI"), the owner and operator of the facility where the procedure was performed. *Id.* at 670. In the supreme court, SADI argued that it was not served with an expert report because the report that was served addressed only Dr. Keszler's conduct and did not mention SADI or implicate its behavior. *Id.* at 671. The supreme court rejected this argument, holding that "[w]hen a party's alleged health care liability is purely vicarious, a

report that adequately implicates the actions of that party's agents or employees is sufficient." *Id.* at 671–72.

■ Although *Gardner* involved a corporation rather than a professional association, we conclude that its reasoning is equally applicable here. Therefore, we reject OGA's assertion, at least concerning "purely vicarious" liability claims, that Dr. Brewer's expert reports concerning Drs. Jacobs and Gunn did not sufficiently implicate OGA. *See id.; Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 295 (Tex.App.-Fort Worth 2008, pet. denied) (holding that expert report that sufficiently addressed certain claims against doctor employed by professional association was sufficient as to claims against professional association based on doctor's negligence because the doctor's negligence is imputed to the association under the Professional Association Act).[2] Here, OGA did not object to Dr. Brewer's reports concerning the conduct of Drs. Jacobs and Gunn within twenty-one days, and so, as to any claims based on vicarious liability, OGA waived any complaints concerning the sufficiency of the reports. *See Ogletree*, 262 S.W.3d at 321–22. Accordingly, the trial court did not err in denying OGA's motion to dismiss vicarious-liability claims based on the negligence of Drs. Jacobs and Gunn.

But OGA contends that in addition to the vicarious-liability claims covered by Dr. Brewer's reports as to Drs. Jacobs and Gunn, McCoy also leveled direct-liability claims against it, for which McCoy has provided no expert report. A plaintiff must provide an expert report as to each health care provider against whom he has alleged a health care liability claim, or the claim must be dismissed on the health care provider's motion. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (providing that a trial court "shall" dismiss a claim when expert reports are not served within 120 days). If OGA is correct that McCoy has asserted claims of direct negligence against it, then McCoy was required to serve OGA with an expert report specifically addressing its conduct rather than just the conduct of Drs. Jacobs and Gunn for which OGA is vicariously liable. Because McCoy served no such report—either at the time he served the other reports or after he filed the third amended petition in which he made the additional allegations OGA complains of—OGA could not have waived any complaints about its sufficiency. *See Poland*, 249 S.W.3d at 615–16; *see also Ogletree*, 262 S.W.3d at 320 (noting that "a deficient report differs from an absent report"). Therefore, we must consider whether, as OGA contends, McCoy has alleged any direct-liability claims against it.

2. In its appellate brief, OGA argues that professional associations are distinct from other types of entities such as hospitals, which may be liable for the conduct of their employees, *see, e.g., Dale*, 188 S.W.3d at 879, and contends that the distinction between liability for physician-employees and physician-principals is "an important one." OGA argues that, although a professional association may be liable generally for an act of its employee-physician because it has the right to control the physician-employee, it is possible for a physician-principal to act outside the scope of its employment as a principal of the professional association. *See Battaglia v. Alexan-*

*der*, 177 S.W.3d 893, 901 (Tex.2005) ("While a professional association with a single principal can act only through that person, the person can act outside the scope of his employment as principal of the association."). Thus, OGA continues, the conduct of the physician-principal does not necessarily implicate the conduct of the professional association. However, OGA fails to explain how this distinction applies to this case other than to distinguish this case from *Dale*. Further, OGA did not argue below that the doctors were not acting in the course and scope of their employment. Therefore, we express no opinion on this argument.

### 2. Did McCoy Assert Direct–Liability Claims Against OGA?

OGA maintains that the trial court abused its discretion in failing to grant OGA's motion to dismiss McCoy's claims against it because McCoy alleged that OGA was liable under both vicarious- and direct-liability theories, but served no expert reports specifically addressing OGA's allegedly negligent conduct as a professional association. In response, McCoy repeatedly asserts in his appellate brief that the only basis for OGA's liability is vicarious liability, and he is not asserting any direct-liability claims against OGA. McCoy's counsel maintained this position at oral argument.

In their briefs, the parties concentrate much of their briefing on whether OGA was sufficiently implicated in Dr. Brewer's experts reports concerning Drs. Jacobs and Gunn. However, as noted above, the supreme court has recently held that when a party's alleged health care liability is "purely vicarious," a report that adequately implicates the actions of that party's agents or employees is sufficient. *Gardner*, 274 S.W.3d at 671–72. Therefore, we will turn to OGA's argument that McCoy alleged direct-liability claims against it and, consequently, section 74.351 required McCoy to provide an expert report addressing OGA's conduct as a professional association.

#### a. Alleged Liability Under the Professional Association Act

First, OGA contends that Texas law interprets a claim against a professional association for the acts of its physician-principals under the Texas Professional Association Act as a direct-liability claim against the professional association. *See Battaglia v. Alexander*, 177 S.W.3d 893, 902 (Tex.2005); *Kettle v. Baylor Med. Ctr.*

*at Garland*, 232 S.W.3d 832, 842 (Tex. App.-Dallas 2007, pet. denied); *see also* Tex.Rev.Civ. Stat. Ann. art. 1528f, § 24 (Vernon 2003 & Supp.2008) (providing that a professional association "shall be jointly and severally liable" with the officer or employee furnishing professional services for, among other things, the officer's or employee's negligence when in the course of employment for the association). Consequently, it argues, McCoy was required to serve an expert report addressing OGA's conduct.

In *Battaglia*, the supreme court considered, among other things, whether two professional associations were directly liable for the plaintiffs' health care liability claims when one of their physicians obtained a directed verdict and a jury failed to find the other physician negligent. 177 S.W.3d at 901–902. On the facts before it, the court stated that "[e]ach professional association had direct liability for the actions of its physician-principal in the course of his employment, and vicarious liability for the actions of its agents and employees in the course of their employment." *Id.* at 902. Recognizing that a professional association can act only through individuals, the court went on to state that "[i]f the physicians were negligent, the professional associations were likewise negligent, since each association acted only through its physician-principal." *Id.* The court agreed with the professional associations that they could not have been negligent if their respective physician-principals were not negligent, but determined that the physician's lack of negligence was not established at trial. *Id.* at 903. Attributing some of the apparently inconsistent results of the trial to confusion generated by the parties' positions below and the trial court's charge, the court went on to instruct that "the jury should have been asked only whether the

physicians were negligent; the consequences to the professional associations follow as a matter of law." *Id.*

Although OGA seizes on the *Battaglia* court's statement that the professional association had "direct liability" for the actions of its physician-principals, the opinion does not advance its argument that a separate expert report is therefore required. *Battaglia* illustrates that a professional association acts through its principals, agents, and employees, and so can be "directly" liable for the actions of its principals in the sense that the principal's actions are considered the actions of the association itself, as distinguished from vicarious liability for the actions of employees or agents. *See id.* at 902–03. As the court noted, the only question at trial should have been "whether the physicians were negligent"; the legal consequences to the professional association would follow from the answer to that question. *See id.* at 903. Thus, the *Battaglia* court's discussion of direct liability neither addresses nor supports OGA's argument that an expert report specifically criticizing its conduct was required. Indeed, a fair reading of *Battaglia* militates against requiring a separate expert report. If the legal consequences to the professional association are based solely on the doctors' conduct, and no allegation is made that the professional association itself is negligent in some way, then a separate expert report addressing the professional association's conduct would appear to be unnecessary. *See id.* at 902–03.

OGA's reliance on *Kettle* is also unavailing. In that case, the plaintiffs sued a professional association and others for alleged medical negligence following Raymond Kettle's death after being implanted with a cardiac pacemaker. 232 S.W.3d at 836. The Kettles filed one expert report from a cardiologist as to all of the defendant physicians and the cardiologists' professional association, and a separate expert report from a nurse as to the conduct of the hospital nurses. *Id.* at 837–42. On appeal, the court rejected the plaintiffs' assertion that the expert-report requirement of article 4590i (the predecessor to chapter 74) did not apply to the professional association because they alleged only vicarious, not direct, liability against the association based on the conduct of a Dr. Agrawal. *Id.* at 842. The court rejected this argument on the grounds that the statute expressly required that an expert report be submitted as to each health care provider. *Id.* The court also relied on the *Battaglia* court's discussion of an association's direct liability under the Professional Association Act. *Id.* However, the court went on to state that "whether [the association's] liability is considered direct or vicarious, that liability still depends on conduct of Agrawal, to which [article 4590i] indisputably applies." *Id.* at 842–43. Because the plaintiffs' expert report was deficient as to Agrawal, the court ultimately held that the trial court did not err in dismissing the claims against the association. *Id.* at 843. Thus, although the *Kettle* court appears to conclude that an expert report is required whenever a professional association is sued, it also recognizes that the liability of the professional association depends on the conduct of the association's physician, and its holding is based on the inadequacy of the expert report as to that physician. Therefore, *Kettle* is not persuasive on the question before us.

■ McCoy's petitions alleged, under a section entitled "Vicarious Liability," that OGA was "vicariously liable for the conduct of its employees, members, and/or agents (Defendants Gunn and Jacobs) under the doctrine of *respondeat superior* and under the statutory vicarious liability

requirements provided in the Texas Professional Association Act." It is evident that this claim is directed to OGA's liability based solely on the conduct of Drs. Gunn and Jacobs; no direct-negligence theories distinct from the doctors' actions are alleged. When liability is alleged against a professional association based solely on the actions of its principals, the question of the professional association's liability is based on a legal principle, not a medical standard of care, and so no expert report is required.[3] *See Hiner v. Gaspard,* No. 09–07–240–CV, 2007 WL 2493471, at *5 (Tex. App.-Beaumont Sept. 6, 2007, pet. denied) (mem.op.) (holding that no expert reports specifically addressing conduct of professional corporation and professional association were required when plaintiffs alleged only vicarious liability based on medical negligence of entities' physicians, explaining that the entities' conduct "is not measured by a medical standard of care" but rather their liability was solely vicarious); *In re CHCA Conroe, L.P.,* 09–04–453–CV, 2004 WL 2671863, at *1 (Tex.App.-Beaumont Nov.23, 2004, orig. proceeding) (mem. op., per curiam) (holding that expert report addressing hospital's conduct was not required when plaintiffs' sole theory against hospital was vicarious liability based on ostensible agency and explaining that "[t]he conduct by the hospital on which the agency relationship depends is not measured by a medical standard of

care. These are principles of agency law on which no expert report is required.").

Here, McCoy seeks to hold OGA liable under a theory of respondeat superior and statutory liability under the Texas Professional Association Act based solely on the conduct of Drs. Jacobs and Gunn. We conclude that, on these facts, a separate expert report addressing OGA's conduct is not required under section 74.351 to support McCoy's allegations.

### b. Alleged Liability for Gross Negligence

■ Next, OGA contends that McCoy's third amended petition attempts to hold it liable for gross negligence, citing the following language: "the evidence clearly and convincingly shows that conduct of . . . [OGA] in this case constitutes 'gross negligence.'" According to OGA, McCoy is alleging that OGA itself committed some conduct amounting to gross negligence, and that the allegation is broad enough to leave the door open for further allegations of direct liability against it. *See Azle Manor, Inc. v. Vaden,* No. 2–08–115–CV, 2008 WL 4831408, at *4 (Tex.App.-Fort Worth Nov.6, 2008, no pet.) (mem.op.) (holding that allegations that entity "among other things" "failed to act as an ordinary prudent person would have under the same or similar circumstances" was broad enough to encompass a direct-liabili-

---

**3.** We note, however, that in certain cases involving complex interrelationships between corporations, professional associations, or other types of entities, a report prepared by an expert in corporate law may be helpful to the medical experts and the court, and may be considered as a "good cause" exception to the general rules concerning expert reports under Chapter 74. *See Packard v. Guerra,* 252 S.W.3d 511, 528–533 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (holding that trial court did not abuse its discretion in considering expert report prepared by non-

physician corporate lawyer to "connect the dots" among the business relationships of defendant entities and doctors acting in their corporate capacities). But this is not such a case. Further, we note that in *Packard,* the plaintiffs alleged that, among other things, the corporations, partnerships, and director/officer physicians were vicariously and directly liable for injuries suffered by the plaintiffs' daughter during delivery because they breached their duties to staff, supervise, and provide medical care to patients in the emergency department of the hospital. *Id.* at 514. McCoy makes no such allegations here.

ty claim and leave the door open for further allegations of direct liability).

In *Azle Manor,* the expert report appellees provided did not mention the Azle Manor nursing home, but did address the alleged negligence of appellants' employees. *Id.* at *5. The court, assuming the adequacy of the reports as to the employees, held that the report was sufficient to satisfy the expert-report requirement for the vicarious-liability claims against appellants. *Id.* However, the court also held that the report was inadequate as to appellees' direct-liability claims because it did not mention appellants and it failed to describe the standards of care applicable to them directly or how they breached those standards. *Id.*

This case is distinguishable from *Azle Manor.* First, when McCoy's allegations are reviewed in context, no direct-liability claim is articulated against OGA, and nowhere does McCoy allege that OGA breached any applicable standard of care rendering it liable for gross negligence. In the section entitled "Gross Negligence" McCoy alleges the following:

> The evidence clearly and convincingly shows that conduct of Defendants Debra C. Gunn, M.D., Mark A. Jacobs, M.D., and Obstetrical and Gynecological Associates, P.A. in this case constitutes "gross negligence" as this term is defined in § 41. 001(11) of [the] Civil Practices and Remedies Code....
>
> . . .
>
> *Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. were negligent and grossly negligent in the care and treatment of Shannon Miles McCoy.* The negligence and gross negligence *of these Defendants* was a proximate cause of Plaintiff's injuries and damages in this case. *Defendant Obstetrical and Gynecological Associates, P.A. is jointly and severally responsible for the grossly*

*negligent conduct of Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D.* According to the Texas Professional Association Act, "[t]he association is jointly and severally liable with the officer or employee furnishing professional services for such professional errors, omission, negligence, incompetence or malfeasance on the part of such officer or employee when such officer or employee is in the course and scope of his employment for the association." TEX.REV.CIV. STAT. ANN. Art 1528f, § 24 (Vernon 2001).

(emphasis added). The plain language of the petition demonstrates that any alleged gross negligence on the part of OGA is, again, based solely on the conduct of Drs. Gunn and Jacobs. Therefore, the *Azle Manor* court's conclusion that an expert report was required to address the appellants' allegedly negligent conduct because the plaintiffs' allegation was broad enough to encompass a claim of direct negligence against the appellants does not apply in this case, because McCoy's allegation that OGA was grossly negligent is limited to OGA's alleged liability for the doctors' conduct.

Even if one were to interpret the allegations broadly enough to encompass some allegation of direct liability against OGA, McCoy has repeatedly asserted throughout his briefing, and represented to this court at oral argument, that he was alleging only claims of vicarious liability, and was not alleging any claims of direct negligence against OGA. Therefore, given McCoy's disclaimer of any theory of direct negligence against OGA, and the language of the petition, we conclude that McCoy's allegation that OGA is liable for gross negligence is based solely on the conduct of Drs. Gunn and Jacobs, and so no expert report is required to address these allegations. *See In re CHCA Conroe, L.P.,* 2004

WL 2671863, at *1 ("Although the plaintiffs' petition could be read more broadly were it not for an express abandonment of all other theories of liability, the sole theory of liability applicable to the relators is a vicarious claim for the medical malpractice of the doctors on the doctrine of ostensible agency.").

*c. Alleged Liability Under Vice–Principal Theory and Ratification*

OGA also contends that McCoy has asserted a direct-liability claim against it based on vice-principal theory and an allegation that OGA authorized or ratified the conduct of Drs. Jacobs and Gunn. McCoy's allegations in the third amended petition in the section entitled "Vice Principal" consist of the following:

Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. are vice-principals of Defendant Obstetrical and Gynecological Associates, P.A. As vice-principals, Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. represent Defendant Obstetrical and Gynecological Associates, P.A. in its corporate capacity. When actions are taken by a "vice-principal" of a corporation, those acts are deemed to be the act of the corporation itself. Defendant Obstetrical and Gynecological Associates, P.A. authorized and/or ratified the conduct of Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. in this case, Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. were employed by Defendant Obstetrical and Gynecological Associates, P.A. in a managerial capacity for Defendant Obstetrical and Gynecological Associates, P.A. at the time of their conduct in this case, and both Defendants Debra C. Gunn, M.D. and Mark A. Jacobs, M.D. were acting in the course and scope of their employment at the time they cared for Shannon Miles McCoy in September 2004.

Again, it is evident that McCoy's allegations are directed to the conduct of Drs. Jacobs and Gunn, and McCoy seeks to impose liability on OGA for their conduct based on legal constructs or principals that make the actions of certain individuals the actions of the entity itself.

 Here, McCoy alleges that Drs. Jacobs and Gunn are vice-principals for purposes of imputing the doctors' alleged gross negligence in caring for Shannon to OGA. A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998). Because a corporation can act only through agents of some character, the supreme court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation. *Id.* The supreme court has determined that a corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it commits gross negligence through the actions or inactions of a vice-principal. *Id.* at 921–22. A vice-principal encompasses (1) corporate officers, (2) those who have authority to employ, direct, and discharge servants of the master, (3) those engaged in the performance of non-delegable or absolute duties of the master; and (4) those to whom the master has confided the management of the whole or a department or a division of the business. *Id.* at 922 (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997)).

McCoy's allegations that OGA "authorized and/or ratified" the actions of Drs. Jacobs and Gunn and that the doctors are OGA's vice-principals do not include any allegation that OGA itself engaged in any act of medical negligence for which an expert report would be required. Instead, McCoy appears to be asserting that OGA

"authorized and/or ratified" Drs. Jacobs and Gunn's conduct merely because Drs. Jacobs and Gunn themselves are simultaneously vice-principals (the ratifiers and authorizers of corporate conduct) and employees of OGA (whose conduct the vice-principals "ratified and/or authorized").[4] McCoy's ratification and authorization allegations, therefore, again amount to nothing more than claims of vicarious liability.[5] Because McCoy's reports as to Drs. Jacobs and Gunn sufficiently address such vicarious-liability allegations, we again reject OGA's assertion that the trial court erred in denying its motion to dismiss McCoy's claims.

OGA repeatedly asserts that McCoy's allegations seek to impose "direct liability" on OGA and that consequently McCoy was required to provide an expert report specifically addressing OGA's conduct. But OGA fails to recognize the distinction between seeking to impose liability based on the entity's own negligence and seeking to impose "direct" liability on an entity by imputing the actions of one or more individuals to the entity. Because entities like professional associations and corporations can act only through individuals, the legal constructs discussed above have been created to distinguish a principal's liability for its own acts as opposed to a principal's liability for the conduct of its employees or agents under the doctrine of vicarious liability or respondeat superior. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex.2007) (explaining that generally, in Texas, the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent). But, the mere allegation of direct liability against an entity, absent any claim that the entity itself was negligent, is not necessarily enough to impose the requirement of an expert report on a plaintiff under chapter 74. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon 2005) (defining a health care liability claim as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.").

A review of several cases involving complaints of direct liability based on an entity's own negligent conduct illustrates the distinction. For example, in *University of Texas Medical Branch v. Railsback*, a plaintiff brought health care liability claims against UTMB, alleging that (1) UTMB failed to monitor its physicians and employees and to provide competent medical staff to ensure the plaintiff's safety, and (2) acting though various individuals, UTMB engaged in acts and omissions constituting negligence, negligent supervision, and failure to properly train its employees

---

**4.** If McCoy had truly pleaded an independent act by the professional association that constituted ratification, another expert report would have been required. *See Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d at 294 (stating that plaintiffs who alleged professional association was directly liable for failing to supervise the provision of health care services were "required to provide an expert report on this claim or face having the claim dismissed with prejudice" and holding that plaintiffs' expert report, which addressed only the conduct of the doctor employed by the professional association, failed to establish a separate standard of care applicable to the professional association).

**5.** This comports with McCoy's counsel's admission in oral argument before this court that McCoy was not asserting any claims of "direct liability" against OGA.

and staff physicians. 259 S.W.3d 860, 862 (Tex.App.-Houston [1st Dist.] 2008, no pet.). The plaintiff's expert report contained no mention of UTMB's standard of care, breach of that standard, or any causal relationship between that breach and the plaintiff's injury. *Id.* at 866. Accordingly, the court held that the trial court abused its discretion in not granting UTMB's motion to dismiss the plaintiff's direct-liability claims against it. *Id.* In *Renaissance Surgical Centers–South Texas, L.L.P. v. Jimenez,* the plaintiffs alleged direct liability theories against a surgical center and several related entities for improperly discharging the patient and for negligent supervision. No. 13–07–00121–CV, 2008 WL 3971096, at *1 (Tex.App.-Corpus Christi Aug.28, 2008, no pet.) (mem.op.). In an effort to satisfy the expert-report requirement as to these claims, the plaintiffs provided two expert reports. The court found that one of the expert reports sufficiently addressed causation, but because it found the other expert unqualified, it remanded in part to allow the trial court to consider whether to grant a thirty-day extension to cure the deficient report. *Id.* at *10.

In *Center for Neurological Disorders, P.A. v. George,* the plaintiff alleged two direct-liability claims against CND, a professional association: (1) that CND failed to timely, properly, safely, or adequately govern or supervise the quality of medical, surgical and health care services to and for the patient; and (2) CND directly and through its employees or agents engaged in acts or omissions departing from the applicable standard of care. 261 S.W.3d at 294. The expert's report was held to be insufficient as to the failure to supervise claim because the plaintiffs' expert report discussed CND's negligence only in the context of its provision of medical services through its doctor. *Id.* The court noted that, although the report clearly supported a claim for CND's vicarious liability for the doctor's negligence, it failed to support a separate standard of care applicable to a professional association of neurosurgeons. *Id.* As to the other claim against CND, the court did not address it because it found that CND did not raise any complaint below about that claim. *Id.* at 295.

In each of these cases, plaintiffs alleged direct-liability claims asserting medical negligence or the breach of a standard of care against the defendant entity *as an entity.* The courts then determined whether the statutory expert-report requirements of standard of care, breach, and causation were satisfied as to the direct-liability claims alleged. In contrast, McCoy has alleged no such claims against OGA; all of its claims are based on OGA's vicarious or direct liability for the actions of Drs. Jacobs and Gunn based on legal principles for which no expert report is required. Therefore, on the facts of this case, we conclude that the trial court did not abuse its discretion by not granting OGA's motion to dismiss. We therefore overrule OGA's issue.

### Conclusion

We affirm the trial court's order denying OGA's motion to dismiss.