**Opinion issued August 27, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00796-CV

———————————

## ANTHONIA UDUMA, Appellant

## V.

## PATTI J. WAGNER, AS GUARDIAN OF JENNY WAGNER, AN INCAPACITATED ADULT, Appellee

---

### On Appeal from the 269th District Court
### Harris County, Texas
### Trial Court Case No. 2009-40925

---

## MEMORANDUM OPINION

This interlocutory appeal is from the trial court's denial of Anthonia

Uduma's motion to dismiss filed pursuant to Texas Civil Practice and Remedies

Code section 74.351.[1]  In two issues, Uduma argues that the trial court (1) erred in holding that Chapter 74 did not apply to the claims against her,[2] and (2) abused its discretion when it denied her motion to dismiss.  We affirm.

## Factual Background

Four J's Community Living Center operated a residential care facility for disabled adults in Missouri City, Texas, that caught fire on September 4, 2008. Four J's leased the residence from Uduma, Four J's' owner, principal officer, director, and CEO.  The fire originated in the bedroom of resident Esperanza Arzola, who lit her mattress afire with a cigarette lighter, and the fire spread quickly to the rest of the house.  Four residents (Jenny Ann Wagner, Tanya James,

---

[1]  In 2013, the Legislature amended section 74.351(a) of the Texas Civil Practice and Remedies Code to require each health care liability claimant to serve an expert report "not later than the 120th day after the date *each defendant's original answer is filed*" and states that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served *or the 21st day after the date the defendant's answer is filed*, failing which all objections are waived."  *See* Act of May 26, 2013, 83rd Leg. R.S., ch. 870, § 2 (emphasis added).  The new provision applies to all suits filed after September 1, 2013.  Wagner filed her claims in 2009 and, therefore, the former section 74.351 still applies.  *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2014)).  Under the earlier version, health care liability claimants must serve an expert report on each health care provider defendant no later than 120 days after filing their initial petition and defendants must file and serve any objections to the sufficiency of the report not later than the 21st day after the date the report is served.  *Id.*

[2]  The trial court denied Uduma's motion to dismiss and motion for leave to amend without explanation; the trial court's order does not indicate that the court held that Chapter 74 was inapplicable with respect to Uduma.

2

Elisha Campbell, and Arzola) and a Four J's staff member, Amuche Udemezue, were in the building when the fire began. Although she was responsible for all four residents, Udemezue panicked and fled the house. Campbell and Arzola, too, escaped. Jenny and Tanya did not.

There were no overhead sprinklers in the building, and although the house had a working fire alarm, it was not connected to the fire department. When the fire department arrived on the scene, the house was engulfed. The Fire Department's efforts to rescue Jenny and Tanya were further impeded by a deadbolt lock on one of the house's two exit doors that required a key to open from the inside.

Jenny, a severely disabled and wheelchair-bound thirty-five year old woman with the mental capacity of a two-year old, had lived at the Center since 2002. Legally blind since infancy and afflicted with cerebral palsy, she has demonstrated profound mental retardation since eighteen-months old. Jenny suffered second- and third-degree burns and injuries from smoke inhalation. Her permanent scarring and disfigurement required skin grafts, which surgery took place over the course of one month in the hospital followed by several months of rehabilitation.

## Procedural Background

Jenny's mother, Patti Wagner, filed suit against Four J's on Jenny's behalf in June 2009. On October 23, 2009, Wagner served expert reports addressing Four J's negligence.[3] In September 2010, Wagner added Uduma as a defendant.[4]

Twelve days before trial—and ten months after the docket control order's deadline for filing all pleadings and amendments—Four J's and Uduma filed a Combined Third Amended Answer asserting the applicability of and the claimants' non-compliance with Chapter 74 for the first time. The Combined Third Amended Answer states in pertinent part:

> Defendants Four J's Community Living Center, Inc. [and] Anthonia Uduma . . . affirmatively plead the provisions of Texas Civil Practice and Remedies Code sections [74.301, 74.302, and 74.303], which limits the amount of damages recoverable in a healthcare liability claim, except for past and future medical expenses that may be recovered herein. Defendants Four J's Community Living Center, Inc. [and] Anthonia Uduma . . . further assert that Plaintiff has failed to comply with the requirements of Texas Civil Practice and Remedies Code [Chapter 74].

Contending that this amendment asserted new defenses and changed the nature of the case, Wagner objected and filed a motion to strike, that argued, inter alia, that

---

[3] Wagner maintains that this lawsuit involves no health care liability claims, but served the expert reports out of an abundance of caution.

[4] That same month, Wylette Taylor intervened to assert claims against Four J's and Uduma on behalf of Derrick Leon James, the son of Tanya James, who died from the burns and smoke-related injuries she suffered during the fire. Uduma and Four J's eventually resolved their claims with Taylor. Taylor is not a party to this appeal.

4

her claims against Four J's and Uduma were not Chapter 74 health care liability claims. Uduma, Wagner argued, who has no medical training, is "merely a landlord/premises owner. She leases residences to Four J's . . . . In her capacity as a landlord, Mrs. Uduma is not a health care provider and it is ludicrous to presume otherwise. She is no different from any other commercial property owner who leases property for profit. She is not a health care provider."

Uduma and Four J's subsequently filed a joint motion for leave to amend and a response to the motion to strike in which they acknowledged that Wagner's expert reports were timely filed and that she had "met the initial hurdle of a Chapter 74 claim—that of timely filing an expert report." Notably, although Uduma and Four J's' motion and response generally contend that Chapter 74 applies to the present case, they only address the applicability of the chapter with respect to "Defendant Four J's." They do not specifically argue that Chapter 74 applies to the claims asserted against Uduma.

The case was set and called to trial on October 17, 2011. The pretrial hearing was that same day and both the motion for leave to amend and Wagner's motion to strike the Combined Third Amended Answer were considered. Expressing concern as to "the consequences of allowing an amendment to assert Chapter 74," the trial court sought clarification as to whether the statute applied to Uduma. In discussing the amendment, Wagner noted that Uduma was "being sued in her

capacity as a property owner" and not as a health care provider. Uduma's counsel agreed, unequivocally disclaiming the application of Chapter 74 to Uduma:

> UDUMA'S COUNSEL:  Judge, with regard to Ms. Uduma, **I think he's correct.  Chapter 74 wouldn't apply.**  She's just a premises owner.  She owns the building.
>
> . . .
>
> [T]he [Texas Supreme] Court has read [Chapter 74] broadly to encompass [certain claims].  **It doesn't encompass Ms. Uduma**.  It does encompass Four J's Community Center.

(emphasis added).

Consistent with the representations Uduma made in her motion for leave to amend and response to the motion to strike, Uduma's counsel further acknowledged that Wagner had already filed an expert report discussing Four J's negligence: "The Court's correct that [Wagner has] timely filed expert reports."  Counsel also represented to the trial court that the only effect of allowing the amendment with respect to Wagner would be the damage cap.

Based on these representations, the trial court denied the motion to strike, granted the motion for leave to amend, and asked Wagner if she wanted a continuance.  Wagner asked the trial court to clarify how the ruling applied to Uduma:

> WAGNER'S COUNSEL: Your Honor, one question of clarification: Is your ruling applicable to both defendants or just to Four J's Community Living Center in light of [Uduma's counsel's] comments to the Court?

6

THE COURT: [Uduma's counsel], are you—

UDUMA'S COUNSEL: Judge, primarily to Four J's. **It doesn't apply to Ms. Uduma.**

THE COURT: **So you're not asserting Chapter 74 as to Ms. Uduma?**

UDUMA'S COUNSEL: Well, as the—as the owner of the property.

THE COURT: Well, what does that mean? She's a defendant. Is— **are you going to claim any—any defenses, any rights, any applicability of Chapter 74 as to Ms. Uduma?**

UDUMA'S COUNSEL: **No, Your Honor.**

(emphasis added). As a result, the trial court's ruling allowed Four J's to amend its answer with respect to Wagner in order to invoke Chapter 74's damages cap with respect to Four J's, but nothing else.

Consequently, Wagner declined the court's offer of a continuance and the case proceeded to trial. The jury found both Uduma and Four J's negligent and apportioned the responsibility at 40% and 60%, respectively. The jury also awarded approximately $8 million in damages to Wagner.[5]

After the trial concluded, Uduma retained new counsel, who then filed a Motion to Apply Chapter 74 Limitations on Noneconomic Damages with respect to both Four J's and Uduma, asserting that Chapter 74 limited the damages that could be assessed against both defendants. And in response to Wagner's Motion

---

[5] Taylor, who was still a party to the suit at this point, was awarded approximately $6 million in damages.

for Entry of Final Judgment, Uduma's newly retained counsel also argued that "any action against Mrs. Uduma must be dismissed [under Section 74.351] because [Wagner] . . . failed to serve an expert report within 120 days."   After being advised of Uduma's counsel's pretrial statements and reviewing the transcript from the hearing, however, Uduma's new counsel withdrew the argument that claims against Uduma should be dismissed for failing to file an expert report:

> THE COURT: Are you still persisting in this argument that because there was no expert report as to Ms. Uduma that the claims against her should be dismissed?
>
> [UDUMA'S NEW COUNSEL]: No.  No, we're not.  I had made that argument before I saw your comments in the pretrial.  And your comments in the pretrial made [it] clear that that expert report argument was waived, and we're not raising that anymore.
>
> THE COURT: All right.

The trial court subsequently entered judgment in favor of Wagner for the full, uncapped damage amount awarded by the jury.[6]  After the entry of judgment,

---

[6]   At the conclusion of the hearing, the trial court stated:  "I am persuaded to grant the motion for entry of judgment.  I am not persuaded to apply the caps.  I am not persuaded to exclude Ms. Uduma from liability. . . . Do you have a judgment for me?"  The transcript from that hearing reflects that the trial court declined to apply the damages cap because Four J's did not prove its status as a health care provider at trial (i.e, the record was devoid of any evidence that Four J's was licensed by the State of Texas to provide health care).  *See Brown v. Villegas*, 202 S.W.3d 803, 806–07 (Tex. App.—San Antonio 2006, no pet.) ("Because the record does not contain any evidence establishing that LabCorp is 'duly licensed, certified, or registered or chartered by the State of Texas to provide health care' or that LabCorp is an independent contractor of Dr. Arthur, the trial court's order dismissing Brown's claims against LabCorp and Villegas [pursuant to Chapter 74] must be reversed.").

8

Uduma and Four J's filed a motion for new trial, which the trial court granted on the ground that the verdict was contrary to the great weight of the evidence because the jury failed to find Arzola, the resident who set the fire that was the cause-in-fact of Jenny's injuries, was negligent.[7]

Shortly before the second trial, Uduma sought leave to amend and pleaded Chapter 74 in her Fourth Amended Answer, and moved to dismiss Wagner's claims against her pursuant to section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (providing that if health care liability claimant does not serve expert report as required, trial court must, upon motion by affected health care provider, dismiss claim with prejudice and award reasonable attorney's fees and court costs). After a hearing on these motions two days before trial was scheduled to begin, the court denied leave to amend[8] and denied the motion to dismiss without explanation.

Uduma is appealing the denial of her motion to dismiss.[9]

---

[7] Wagner contends that the trial court's granting of a new trial on this basis was error and she notes that the court's ruling will be the subject of a future appeal in this case.

[8] As a result of the denial of the motion to amend, Uduma's live pleading is the Combined Third Amended Answer, which, pursuant to the trial court's ruling, only allowed Four J's to assert Chapter 74's damages caps as an affirmative defense.

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2014) (allowing interlocutory appeal from denial of motion to dismiss under Section 74.351(b)). Unlike the denial of a motion to dismiss pursuant to Section

9

**Discussion**

Uduma argues that the trial court abused its discretion when it denied her motion to dismiss pursuant to Section 74.351 because she is a health care provider and Wagner failed to serve an expert report for her within 120 days of naming her as a defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (requiring health care liability claimant to serve expert report within 120 days of filing original petition for each health care provider against whom liability is asserted), § 74.351(b) (stating failure to serve expert report entitles affected health care provider to dismissal of claims with prejudice and award of attorney's fees).

Wagner's response notes two independent reasons to affirm the trial court's order without addressing the merits: (1) whether construed as waiver, estoppel, or judicial admissions, Uduma is bound by her counsel's representations to the trial court that Chapter 74 was inapplicable to her and she asserted no rights thereunder, and (2) Chapter 74 is an affirmative defense that Uduma waived by failing to timely plead and/or securing leave to amend after the docket control deadline.

**Standard of Review**

We review a trial court's denial of a motion to dismiss filed under Civil Practice and Remedies Code section 74.351(b) for abuse of discretion. *Am. Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (applying

74.351(b), there is no statutory right to an interlocutory appeal from the denial of a motion for leave to amend.

10

abuse of discretion standard under predecessor statute).  However, to the extent resolution of this issue requires interpretation of the statute itself or resolution of another question of law, we review under a de novo standard.  *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 818 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

## Waiver

Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."  *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citations omitted).  The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right.  *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  The question of waiver is ordinarily one of fact.  *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).  Because waiver is largely a matter of intent, a court must consider the words, acts, and conduct of the parties.  *See Mandell v. Mandell*, 214 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Robinson v. Robinson*, 961 S.W.2d 292, 299 (Tex. App.—Houston [1st Dist.] 1997, no writ); *see also Jernigan*, 111 S.W.3d at 156 (holding intent must be discerned by reviewing "the surrounding facts and circumstances").  However, when the facts and circumstances

11

surrounding the question of waiver are undisputed, as in the present case, the question of waiver because a question of law. *Jernigan*, 111 S.W.3d at 156–57.

**Analysis**

Here, Uduma's counsel expressly and unambiguously waived "any defenses, any rights, any applicability of Chapter 74 to Ms. Uduma" on the record and in open court prior to the first trial on the merits.

Uduma, however, argues that her counsel's "spontaneous" statements at the October 2011 pretrial hearing do not constitute an intentional relinquishment of her known rights because the trial court made "inaccurate statements" during the hearing which "misrepresented" her rights with respect to Chapter 74. Uduma further contends that it has always been her position that Chapter 74 applies to her and that her counsel only abandoned this position at the pretrial hearing because the trial court "convinced" him to do so based on the trial court's (alleged) "predisposition that Chapter 74 did not apply to her." According to Uduma, it was only after the trial court's "compelling statement" that Uduma "obviously . . . waived any right to move to dismiss for an inadequate expert report" that her counsel abandoned her Chapter 74 argument.

First, the record does not support Uduma's characterization of her counsel's statements as "spontaneous" or her argument that her counsel "abandoned" the argument that Chapter 74 applied to her only after the trial court "convinced" him

12

to do so. On the contrary, the purpose of the pretrial hearing on Four J's and Uduma's motion to amend and Wagner's motion to strike was to determine whether Uduma and Four J's were allowed to amend their answer to assert the protections of Chapter 74.[10] Given the nature of the proceedings, and the fact that Wagner *explicitly* argued in her motion to strike that Chapter 74 did not apply to the claims against Uduma, Uduma's counsel should have anticipated the question and been prepared to respond. The fact that counsel wishes to change his answer after he has had additional time to reflect may indicate that the position he asserted at the pretrial hearing was ill-advised, but it does not mean that the position asserted was unintentional at the time it was made on the record and in open court. Moreover, the facts and case law that Uduma now claims support the application of Chapter 74 in this context were known to Uduma at the time of the pretrial hearing. *See generally Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392,

---

[10] We note that although section 74.351(b)'s *dismissal provision* is not an affirmative defense, Chapter 74's damages cap is, and as such, it must be pleaded by the defendant or else it is waived. *See Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that unlike damages cap, section 74.351(b)'s dismissal provision is not affirmative defense); *see also Webster v. Johnson*, 737 S.W.2d 884, 889 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (holding that damage limit in Chapter 74's predecessor statute was affirmative defense that must be pleaded, or else it is waived); *Tsai v. Wells*, 725 S.W.2d 271, 275 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (same).

395 (Tex. 2011) (opinion issued July 1, 2011); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010).

Similarly, the record does not support Uduma's position that her counsel "abandoned" the Chapter 74 argument only after the trial court—who allegedly expressed a predisposition that Chapter 74 was inapplicable to Uduma— "convinced" him to do so. On the contrary, the record does not reflect that the trial court expressed a predisposition—one way or the other—with respect to the applicability of Chapter 74 to the claims against Uduma. Having reviewed the relevant portions of the transcript of the pretrial hearing, it is apparent that the trial court was only attempting to clarify Uduma's position on the eve of trial in order to ascertain the impact of the court's ruling with respect to the pending motions; the record does not evidence any attempt by the trial court to influence Uduma's answers.

Uduma's position is further compromised by the positions taken in Four J's and Uduma's motion for leave to amend and their response to Wagner's motion to strike which they handed to the trial court prior to the commencement of the October 2011 hearing. Although the filing generally asserts the applicability of Chapter 74 to the case, the case law supporting this assertion—*Omaha Healthcare*—is only analyzed with respect to "Defendant Four J's" (e.g., "[a]s with the nursing home in *Omaha Healthcare*, Defendant Four J's . . . ," "as with

14

Defendant Four J's here," and "as does Four J's"). There is no attempt to apply the facts in *Omaha Healthcare* to Uduma, herself. This notable omission undermines Uduma's argument that it was her position *going into* the pretrial hearing that Chapter 74 applied to the claims against her and that she only deviated from that position because the trial court "convinced" her to do so.

Second, the trial court's statement that the defendants, Uduma and Four J's, had "long since waived any right to move to dismiss for an inadequate expert report" is not inaccurate.[11] Wagner served two Chapter 74 expert reports in October 2009. Section 74.351(a) provides that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, *failing which all objections are waived*." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added). Four J's, whose conduct was clearly implicated in the reports, did not file any objections to Wagner's reports within the twenty-one-day period, thus waiving any objections to the adequacy of those reports. *Id.* Similarly, to the extent that Uduma is challenging the *adequacy* of those reports as to her—as opposed to the *complete lack* of any report—her

---

[11] The trial court stated: "Okay. Well, I'm trying to get down to the brass tacks of what the consequences of allowing an amendment to assert Chapter 74 would be since, obviously, they've long since waived any right to move to dismiss for an inadequate expert report."

deadline for filing and serving objections to those reports had long since passed by the time of the October 2011 pretrial hearing.[12]

Third, although there is no statutory deadline for filing a motion to dismiss pursuant to section 74.351(b) when no expert report has been filed which implicates the conduct of a health care liability defendant, this does not mean that a defendant cannot waive its right to a dismissal pursuant to this section under any circumstance. *See Jernigan*, 111 S.W.3d at 156–58. On the contrary, the Supreme Court has recognized that traditional waiver principles apply to Chapter 74 claims and that, while the mere passage of time does not waive a defendant's right to a dismissal under Chapter 74 when there is no statutory deadline for asserting said right, a defendant may still waive its right to a dismissal under Chapter 74 if the defendant's conduct is "inconsistent with the intent to rely upon the right to

---

[12]     This is true regardless of whether we calculate Uduma's twenty-one-day deadline from the time she was first named as a premises-liability defendant in September 2010 or from April 2011, when Wagner filed a second amended petition contending that Uduma was liable for the wrongful and negligent conduct of Four J's under the alter ego theory of liability. *See Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 102–03 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding that trial court did not abuse its discretion by not dismissing plaintiff's "purely vicarious" liability claims against health care provider not mentioned in expert reports because health care provider waived any challenges to sufficiency of those reports by not objecting within twenty-one days).

16

dismissal." *Id.* at 157–58 (discussing waiver with respect to Chapter 74's predecessor statute).[13]

After applying traditional waiver analysis, the *Jernigan* court concluded that the defendant's actions in that case were not so inconsistent with the intent to assert the right to dismissal under Chapter 74's predecessor statute as to amount to a waiver of that right. *Id.* at 157. In doing so, the Court noted that "there had been no hearing on [the summary judgment] motion nor had a conventional trial begun when [the defendant] moved for dismissal." *Id.* Other courts of appeals, however, including this Court, have found waiver under different circumstances. *See Mem'l Hermann Hosp. Sys. v. Hayden*, No. 01–13–00154–CV, 2014 WL 2767128, at *9–10 (Tex. App.—Houston [1st Dist.] Jun. 17, 2014, no pet. h.) (mem. op.) (distinguishing *Jernigan* on its facts and holding defendant who completed discovery, moved unsuccessfully for summary judgment on plaintiff's claims, and announced "ready" for trial twice before seeking dismissal "four days prior to the trial court actually calling the case to trial," waived its right to seek dismissal under Chapter 74; opinion further noted that although defendant had filed motion to

---

[13] Chapter 74's predecessor statute imposed a deadline on the claimant to file an expert report, but it did not impose a deadline for a health care provider to file a motion to dismiss on the ground that the claimant failed to comply with the rule. *See* TEX. REV. CIV. STAT. ANN. art. 4590i, § 13.01(e); *see also Jernigan v. Langley*, 111 S.W.3d 153, 156 & n.1 (Tex. 2003) (discussing section 13.01(e) and noting that new version of statute required defendant health care provider to object to sufficiency of expert report within twenty-one days of report's service, or else "all objections are waived").

dismiss twenty-two months earlier, totality of circumstances demonstrated that defendant had "strategically decided not to pursue" that motion and "instead, it attempted to obtain a final judgment through other means"); *see also Spinks v. Brown*, 211 S.W.3d 374, 378 (Tex. App.—San Antonio 2006, no pet.) (distinguishing *Jernigan* on its facts and holding that defendant waived right to dismissal under Chapter 74 when defendant made conscious decision to not raise issue prior to trial and, instead, waited until after full trial on merits to raise issue); *In re Sheppard*, 197 S.W.3d 798, 801–02 (Tex. App.—El Paso 2006, orig. proceeding) (distinguishing *Jernigan* on its facts and holding that defendant who participated extensively in discovery and announced ready for trial had acted "inconsistent with an intent to rely upon the right to seek a dismissal" and therefore waived right to dismissal). Even if we were to disregard Uduma's counsel's unambiguous waiver of "any defenses, any rights, any applicability of Chapter 74 to Ms. Uduma" prior to the first trial on the merits, the fact is that, unlike in *Jernigan*, Uduma sought a dismissal under Chapter 74 only *after* the first full trial on the merits *concluded*. *See Jernigan*, 111 S.W.3d at 157 (noting that "there had been no hearing on [the summary judgment] motion nor had a conventional trial begun when [the defendant] moved for dismissal"). Such conduct is inconsistent with the intent to rely upon the right to seek a dismissal. *See Spinks*, 211 S.W.3d at 378 (holding defendant waived right to dismissal under Chapter 74 by waiting until

18

after full trial on the merits to move for dismissal); *see generally Mem'l Hermann*, No. 01–13–00154–CV, 2014 WL 2767128, at \*10 (holding defendant who "strategically decided not to pursue" initial motion to dismiss waived right to dismissal under Chapter 74 by waiting until eve of trial to seek dismissal). Accordingly, under the specific facts of this case, we hold that the trial court did not abuse its discretion when it denied Uduma's motion to dismiss pursuant to section 74.351 because Uduma waived her right to such a dismissal.

## Conclusion

We affirm the trial court's order denying Uduma's motion to dismiss.


Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.