COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.  2-08-424-CV

 

 

PEDRO
E. ESTORQUE, JR., M.D.,                                         APPELLANTS

INDIVIDUALLY AND D/B/A
PEDRO E.

ESTORQUE, JR., M.D., P.A.
AND 

AMJAD AWAN, M.D.,
INDIVIDUALLY 

AND D/B/A NORTH TEXAS 

GASTROENTEROLOGY 

CONSULTANTS, P.A.

 

                                                   V.

 

SHIRLEY
SCHAFER AND                                                        APPELLEES

ANTHONY B. SCHAFER

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








This is an interlocutory appeal from a denial of
a motion to dismiss challenging the sufficiency of an expert report in a health
care liability claim.  Appellants are Dr.
Pedro Estorque, Jr., individually and d/b/a Pedro Estorque, Jr., M.D., P.A.,
and Dr. Amjad Awan, individually and d/b/a North Texas Gastroenterology
Consultants, P.A.  Appellants challenge
the trial court=s order denying their motions to
dismiss the expert report submitted by Appellees Shirley Schafer and Anthony
Schafer.  In three issues, Dr. Estorque
argues that the trial court abused its discretion by denying his motion because
the Schafers= expert report (1) evidenced the
expert=s lack
of qualifications to opine on causation, (2) lacked sufficient explanation of
the causal relationship between the breach of care and injury, and (3) lacked
explanation of the negligence claim against Pedro Estorque=s
professional association.  Dr. Awan
raises the same expert qualifications, causation, and professional association
arguments as Dr. Estorque and additionally challenges the report=s
identical criticisms of both his actions and Dr. Estorque=s
actions.[1]  We affirm in part and reverse in part.

II.     Factual and procedural
background








The Schafers=
original petition contained the following allegations:  on March 6, 2006, Shirley arrived at the
Presbyterian Hospital emergency room, presenting with severe abdominal
pain.  Her family physician, Dr.
Estorque, admitted her to the hospital for evaluation.  Dr. Estorque performed a CT scan on Shirley=s
abdomen and pelvis.  The examination
report noted a A4.8 centimeter cyst on the right
ovary and a smaller cyst on the left ovary,@ a Adilated
upper left pale collecting system with a dilated left ureter where a 3.0
millimeter kidney stone was visualized,@ and Aan
inflammatory focus related to sigmoid diverticulitis.@  Dr. Estorque referred Shirley to a
gastroenterologist, Dr. Amjad Awan, who consulted during her
hospitalization.  Dr. Awan further
investigated her gastrointestinal-related symptoms and treated Shirley for
alleged diverticulitis starting in April 2006. 
Neither Dr. Estorque nor Dr. Awan referred Shirley to any other doctors.








Shirley continued to feel abdominal pain for nine
months after her consultations with both doctors.  In December, she consulted with Dr. Fred
Cummings, her gynecologist, who reviewed Shirley=s chart
from her March 6 hospital visit, noting her gynecological and renal issues.[2]  On December 2, a new CT scan of her abdomen
and pelvis revealed that the 4.8 centimeter cyst revealed in the previous March
6 CT scan had enlarged to 7.2 centimeters and that her left kidney demonstrated
Aa
markedly distended upper pale collecting system@ and Aintrarenal
calculi.@  Dr. Cummings performed a laparoscopic
oophorectomy.[3]  On December 9, 2006, Dr. Admire performed a
cystoscopy, left ureteroscopy, and removal of the stone, with placement of
stents in the ureters.  The ovarian cysts
were benign; however, the delay in treating Shirley=s renal
problems allegedly resulted in loss of the Atotal
function of one kidney.@

On May 19, 2008, the Schafers sued Appellants for
negligence, asserting that Dr. Estorque and Dr. Awan breached their standards
of care when they each viewed the CT scan results and failed to obtain
gynecological and urological consults for Shirley.  Within 120 days of filing suit, the Schafers
served the statutorily-required expert report on Appellants.  See Tex. Civ. Prac. & Rem. Code
Ann. '
74.351(a) (Vernon Supp. 2008).  Dr. Keith
Miller, a board-certified family physician, wrote the report.








Dr. Awan and Dr. Estorque filed motions to
dismiss, objecting to the adequacy of the expert report.  Dr. Awan objected to (1) Dr. Miller=s
qualifications to opine as to the standard of care, (2) Dr. Miller=s
qualifications as to causation, (3) Dr. Miller=s
failure to provide sufficient information regarding standard of care and
causation for each individual physician, and (4) Dr. Miller=s
speculative causation opinions.  Dr.
Estorque also objected to (1) Dr. Miller=s
qualifications to render an opinion on causation and (2) the sufficiency of the
report to meet the statutory and case law requirements for causation.

The trial court overruled the objections and
denied the motions to dismiss.  This
interlocutory appeal immediately followed.[4]

III.     Standard of review








A trial court=s ruling
concerning an expert report under section 74.351 (formerly article 4590i,
section 13.01) of the Medical Liability and Insurance Act is reviewable under
the abuse of discretion standard.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351;
Bowie Mem=l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002); Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001). 
To determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.  Cire v. Cummings,
134 S.W.3d 835, 838B39 (Tex. 2004).  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances. 
Bowie Mem=l, 79
S.W.3d at 52; E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 558 (Tex. 1995).

IV.    Statutory requirements

A health care liability claimant must serve an
expert report on each defendant no later than the 120th day after the claim is
filed.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351.  If the claimant does not serve an expert
report on a defendant physician or health care provider within the 120-day
period, then on the motion of the affected physician or health care provider,
the trial court must dismiss the claim with prejudice.  Id. '
74.351(b).

A defendant may challenge the adequacy of a
report by filing a motion to dismiss.  Id.
' 74.351(l).  The trial court must grant the motion to
dismiss if it finds, after a hearing, that Athe
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id.  While the expert report Aneed not
marshal all of the plaintiff=s proof,@ it must
provide a fair summary of the expert=s
opinions as to the Aapplicable standard of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.@  Id. ' 74.351(r)(6);
Palacios, 46 S.W.3d at 878 (construing former article 4590i, ' 13.01).








To constitute a good faith effort, the report
must discuss the standards of care, breach, and causation with sufficient
specificity (1) to inform the defendant of the conduct the plaintiff has called
into question and (2) to provide the trial court with a basis to conclude that
the claims have merit.  See Bowie
Mem=l, 79
S.W.3d at 52; Palacios, 46 S.W.3d at 879.  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Bowie Mem=l, 79
S.W.3d at 52; Palacios, 46 S.W.3d at 879.  But the information in the report Adoes not
have to meet the same requirements as the evidence offered in a
summary-judgment proceeding or at trial.@  Palacios, 46 S.W.3d at 879.








When reviewing the adequacy of a report, the only
information relevant to the inquiry is the information contained within the
four corners of the document.  Bowie
Mem=l, 79
S.W.3d at 52; Palacios, 46 S.W.3d at 878.  This requirement precludes a court from
filling gaps in a report by drawing inferences or guessing as to what the
expert likely meant or intended.  See
Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 279 (Tex. App.CAustin
2007, no pet.).  However, section 74.351
does not prohibit experts, as opposed to courts, from making inferences based
on medical history.  Marvin v. Fithian,
No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.CHouston
[14th Dist.] July 1, 2008, no pet.) (mem. op.); see also Tex. R. Evid.
703 (providing that an expert may draw inferences from the facts or data in a
particular case); Tex. R. Evid. 705 (providing that expert may testify in terms
of opinions and inferences).

If a timely served document intended by a
claimant to be an expert report is determined by the trial court to be
deficient in complying with statutory requirements, the trial court may grant
one thirty-day extension to the claimant in order to cure the deficiency.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c).
If the court determines that the report is adequate, the defendant may
challenge that ruling by interlocutory appeal. 
Id. ' 51.014(a); Funderburk,
253 S.W.3d at 207.  An appeals court may
find an expert report deficient and remand the case to the trial court to
decide whether to grant a thirty-day extension to cure the deficiency.  See Leland v. Brandal, 257 S.W.3d 204,
208 (Tex. 2008).

IV.    Dr. Miller=s
qualifications for causation

Dr. Estorque argues in his first issue and Dr.
Awan argues in his third issue that Dr. Miller is not qualified to render
opinions on causation in this case.        A.     Applicable
Law








A person is qualified to give opinion testimony
concerning the causal relationship between the injury, harm, or damages claimed
and the alleged departure from the applicable standard of care only if the
person (1) is a physician and (2) is otherwise qualified to render opinions on
the causal relationship under the Texas Rules of Evidence.  See Tex. Civ. Prac. & Rem. Code
Ann. ''
74.351(r)(5)(C), 74.403(a) (Vernon 2005). 
The party offering the witness as an expert on causation must establish
that the witness is qualified to testify under Texas Rule of Evidence 702.  Mem=l
Hermann Healthcare Sys. v. Burwell, 230 S.W.3d 755, 762B63 (Tex.
App.CHouston
[14th Dist.] 2007, no pet.) (holding doctor was qualified to opine on causation
because report demonstrated direct experience with treating condition at
issue).

To be qualified under Rule 702, an expert witness
must have Aknowledge, skill, experience,
training, or education@ regarding the specific issue
before the court.  Tex. R. Evid. 702; Thomas
v. Alford, 230 S.W.3d 853, 857, 860 (Tex. App.CHouston
[14th Dist.] 2007, no pet.). 
Qualifications must appear in the expert report and cannot be
inferred.  See Olveda v.
Sepulveda, 141 S.W.3d 679, 683 (Tex. App.CSan
Antonio 2004, pet. denied).  When a party
can show that a subject is substantially developed in more than one field,
testimony can come from an expert in any of those fields.  Thomas, 230 S.W.3d at 857 (citing Broders
v. Heise, 924 S.W.2d 148, 154 (Tex. 1996)). 
The analysis of the expert=s
qualifications under section 74.351 is limited to the four corners of the
expert report and the expert=s curriculum
vitae.  See Palacios, 46 S.W.3d at
878. 








A physician does not need to be a practitioner in
the same speciality as the defendant to qualify as an expert.  See Broders, 924 S.W.2d at 153; Moheb
v. Harvey, 2008 WL 5501166, at *6 (Tex. App.CBeaumont
Jan. 15, 2009, no pet.) (mem. op., not designated for publication).  The proper inquiry in assessing a doctor=s
qualifications to submit an expert report is not his area of expertise but his
familiarity with the issues involved in the claim before the court.  See Blan v. Ali, 7 S.W.3d 741, 746
(Tex. App.CHouston [14th Dist.] 1999, no
pet.).  A physician who is not of the
same school of medicine may be competent if he has practical knowledge of what
is usually and customarily done by a practitioner under circumstances similar
to those confronting the defendant.  See
Ehrlich v. Miles, 144 S.W.3d 620, 625 (Tex. App.CFort
Worth 2004, pet. denied).

B.     Analysis

Dr. Estorque and Dr. Awan argue that Dr. Miller
did not have sufficient qualifications in the specialities of nephrology,
urology, and gynecology to render opinions on the causal relationship between
the physicians= failure to refer and the
resulting kidney disorders and gynecological cysts.








To establish his qualifications, Dr. Miller was
required to demonstrate his knowledge, skill, experience, training, or
education regarding the specific issue raised by the Schafers= claim
that would qualify him to give an opinion on that subject.  See Ehrlich, 144 S.W.3d at 625; see
also Roberts v. Williamson, 111 S.W.3d 113, 120B21 (Tex.
2003).  The Schafers=
original petition indicates that their negligence issue relates to Shirley=s
alleged injuries resulting from both doctors= conduct
in their diagnosis, treatment, and lack of referral for her exhibited abdominal
pain, rather than any injury from a specialized treatment or surgery performed
by Dr. Awan or Dr. Estorque.  The
specialized branches of nephrology, urology, and gynecology are not implicated
by the physician=s alleged negligence in failing
to refer Shirley to other specialists for the renal and ovarian problems
revealed in the CT scan.  See Mosely
v. Mundine, 249 S.W.3d 775, 779 (Tex. App.CDallas
2008, no pet.) (stating that alleged conduct causing the patient=s
injuries related to the physician=s
ability to interpret a routine chest x-ray and identify an abnormality rather
than to diagnose and treat cancer).








Dr. Miller stated that he had experience treating
patients with symptoms similar to the symptom=s
Shirley exhibited from March 2006 to December 2006.  Dr. Miller stated that the standards for
treating patients with similar signs, symptoms, and conditions are Anational
standards of care@ and Aapply to
all physicians.@ 
Dr. Miller stated that he was familiar with the causes of abdominal
pain, kidney stones, ureteral obstruction, and ovarian masses.  He also stated that he was familiar with
complications arising from the referenced medical conditions and that he
participated in the development and use of protocols, policies, and procedures
for patients with similar conditions. 
Dr. Miller stated that he Akn[e]w
the accepted standards of care, the breaches and violations of the standards of
care, and the causation link between the breaches and violations of the
standard of care as they apply to Dr. Pedro Estorque and Dr. Amjad Awan, on the
basis of [his] education, knowledge, training, and experience.@  See Tex. Civ. Prac. & Rem. Code Ann. '
74.351(r)(5)(C).

Dr. Miller stated that he acquired his Aeducation,
knowledge, training, and experience@ through
attending classes that taught the evaluation, treatment, diagnosis, and care of
patients with the same or similar conditions as Shirley.  Dr. Miller further stated that he acquired
knowledge about Shirley=s conditions through practical
experience, medical conferences, technical works published in textbooks and
journals, consultations with other physicians, communications with hospital
nurses, staff and residents, lectures personally given in conferences,
participation in hospital committees, and observation of the nurses and
supervising residents that care and treat patients with the same or similar
medical conditions as Shirley.








Based on his knowledge, skill, experience,
training, and education, we conclude that Dr. Miller is qualified to opine
about causation as to both Dr. Estorque and Dr. Awan.  See Tex. R. Evid. 702; compare Mosely, 249
S.W.3d at 779 (holding that expert=s
knowledge regarding emergency room physicians= scope
of practice qualified him to opine on causal link between failing to interpret
abnormality in x-ray and claimant=s
cancer), and Palafox v. Silvey, 247 S.W.3d 310, 316 (Tex. App.CEl Paso
2007, no pet.) (holding physician=s
experience and training with elderly patients and knowledge of Aswallowing
mechanism@ sufficient to opine about
causal link between the non-pureed diet and aspiration-related death), with
Collini v. Pustejovsky, 280 S.W.3d 456, 466 (Tex. App.CFort
Worth 2009, no pet.) (holding doctor not qualified to opine on causation when
he did not state experience or training regarding prescribing Reglan or
diagnosing tardive dyskinesia to support statements about the physician=s course
of treatment).

We hold that the trial court did not abuse its
discretion in overruling Appellants=
objections for this issue.  We therefore
overrule both Dr. Estorque=s first
issue and Dr. Awan=s third issue concerning Dr.
Miller=s
qualifications to opine on causation.

V.     Dr. Miller=s
causation statements

Dr. Estorque argues in his second issue and Dr.
Awan argues in his first issue that Dr. Miller failed to provide a specific
causal link between the health care providers= breach
of the standard of care and the injury or damages.








A.     Applicable
Law

An expert report must provide a fair summary of
the causal relationship between the failure of a health care provider to meet
the standards of care and the injury, harm, or damages claimed.  See Tex. Civ. Prac. & Rem. Code
Ann.  ' 74.351(r)(6);
Palacios, 46 S.W.3d at 875, 878. 
An expert report cannot merely state the expert=s
conclusions about the statutory elements; the expert must explain the basis of
his statements made regarding causation and link his conclusions to the
facts.  See Bowie Mem=l, 79
S.W.3d at 52.  An expert report does not
sufficiently address the causation element if it merely A>provide[s]
insight= about
the plaintiff=s claims.@  Id. 
A causal relationship is established by proof that the negligent act or
omission was a substantial factor in bringing about the harm and that absent
said act or omission, the harm would not have occurred.  Costello v. Christus Santa Rosa Health
Care Corp., 141 S.W.3d 245, 249 (Tex. App.CSan
Antonio 2004, no pet.).  The expert
report must explain how the alleged breach caused the harm or injury.  See Bowie Mem=l, 79
S.W.3d at 53; Collini, 280 S.W.3d at 467; Bidner v. Hill, 231
S.W.3d 471, 475 (Tex. App.CDallas
2007, pet. denied).  However, to avoid
dismissal, a plaintiff need not present all the evidence necessary to litigate
the merits of his case.  Palacios,
46 S.W.3d at 879; Patel v. Williams, 237 S.W.3d 901, 904 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).








B.     Analysis

Dr. Miller stated, separately as to each
physician, that Dr. Estorque and Dr. Awan failed to apply the standard of care
required Aduring the hospitalization of
[Shirley] on 3-6-06.@ 
Dr. Miller stated that each doctor Ashould
have obtained a urological consultation and/or referral in order to obtain
definitive care and treatment of Shirley=s
ureteral obstruction.@ 
He also stated each doctor Ashould
have obtained a gynecological consultation and/or referral in order to obtain
definitive care and treatment for [Shirley]=s
ovarian mass.@ 
Dr. Miller concluded that Dr. Estorque=s and
Dr. Awan=s Afailure
to practice according to acceptable standards, more likely than not and to a
reasonable degree of medical probability, resulted in loss of function of
[Shirley]=s kidney@ and Aresulted
in needless pain and suffering to [Shirley].@  In his summary section, Dr. Miller added
that:

More likely than not, this failure on the part of
. . . Dr. Pedro Estorque and Dr. Amjad Awan, to practice in an acceptable
manner directly resulted in [Shirley]=s
delayed diagnosis and treatment of kidney stones, ureteral obstruction, and
ovarian masses, as well as overall worsening of her condition, pain, mental
anguish, loss of dignity, and loss of kidney function.  As more specifically set forth above, the
actions, and inactions, of Dr. Pedro Estorque and Dr. Amjad Awan, caused the
conditions and complications described above.[5]








It is Dr. Miller=s opinion, as stated in his
report, that A[h]ad the standards of care been
followed by [the physicians], then, more likely than not, and based upon a
reasonable degree of medical certainty, [Shirley] would not have suffered her
delayed diagnosis and treatment of kidney stones . . . [and the other listed
conditions].@








Dr. Miller=s report
does not explain the basis of his opinions as to causation; his report leaves
gaps by not explaining how or why the physicians= failure
to consult a urologist or gynecologist caused worsening or progression of
Shirley=s listed
conditions.  See Ehrlich, 144
S.W.3d at 628 (holding report conclusory because it failed to link alleged
negligent activity to the specific injuries in the case); Hutchinson v.
Montemayor, 144 S.W.3d 614, 617 (Tex. App.CSan
Antonio 2004, no pet.) (holding report conclusory because it did not provide
sufficient information linking the failure to order an arteriogram to
Hutchinson=s eventual leg amputation); cf.
Polone v. Shearer, 287 S.W.3d 229, 236B37 (Tex.
App.CFort
Worth, no pet.) (holding causation report not conclusory because experts linked
the failure to timely evaluate breast mass and pain to the progressive growth
and increased risk of metastatic breast cancer with subsequent morbidity and
mortality), and Eikenhorst v. Wellbrock, No. 01-07-00459-CV, 2008
WL 2339735, at *10 (Tex. App.CHouston
[1st Dist.] 2008, no pet.) (mem. op., not designated for publication) (holding
causation report not conclusory because expert stated that patient would have
received immediate surgery and would have had a greatly recovered health status
had he obtained an early diagnosis).  Dr.
Miller=s report
does not provide a chain of causation that adequately describes how the ureter,
kidney, and ovarian conditions, left untreated, progressed to the claimed
injured state and how Dr. Estorque=s and
Dr. Awan=s acts
were a substantial factor in this progression. 
See Costello, 141 S.W.3d at 249 (holding report did not explain
how alleged failure to act was a substantial factor in bringing about patient=s
death).








Beyond Dr. Miller=s
statement that had the standards of care been followed, Shirley would not have
suffered her delayed diagnosis and subsequent conditions, Dr. Miller does not
explain how the injuries would not have occurred if Dr. Estorque and Dr. Awan
had obtained consults from a urologist and gynecologist earlier in Shirley=s course
of treatment.  Compare Eikenhorst,
2008 WL 2339735, at *10 (holding causation sufficient where expert stated that Asurgical
intervention would have reliev[ed] pressure on the spinal cord and stabiliz[ed]
the spine@), with Jones v. King,
255 S.W.3d 156, 160 (Tex. App.CSan
Antonio 2008, pet. denied) (holding that expert report needed an explanation
that Aearlier
treatment would have shortened the duration of meningitis, precluding
additional pain and suffering, or preventing other alleged injuries or damages@).  Dr. Miller did not explain how the alleged
breaches led to a deterioration of kidney function and triggered needless pain
and suffering, and we cannot infer that failing to notify and send Shirley to a
urologist and gynecologist was a substantial factor in causing the alleged
conditions and injuries.  See Collini,
280 S.W.3d at 467 (holding expert report did not sufficiently explain how
Dr. Collini=s prescriptions of Reglan led to
Pustejovsky=s condition).

Based on the report=s
limited description of causation, we cannot say that Dr. Miller sufficiently
explained how the doctors= inaction caused Shirley=s
injuries to provide the trial court with a basis to conclude that the Schafers= claim
had merit.  See Bowie Mem=l, 79
S.W.3d at 52.  Therefore, the trial court
abused its discretion by denying the motions, and we sustain Dr. Estorque=s second
issue and Dr. Awan=s first issue. 

VI.    Dr. Miller=s
criticism of the two physicians

Dr. Awan argues in his second issue that an
expert report must provide an individualized assessment of the statutory
elements as to each health care provider that has been sued.








A.     Applicable
law for multiple defendants

When a plaintiff sues more than one defendant,
the expert report must set forth the standard of care applicable to each
defendant and explain the causal relationship between each defendant=s
individual acts and the injury.  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a), (r)(6); Sanjar v. Turner, 252 S.W.3d 460, 465 (Tex. App.CHouston
[14th Dist.] 2008, no pet.)  Collective
assertions of negligence against various defendants are inadequate.  See CHCA Mainland, L.P. v. Burkhalter,
227 S.W.3d 221, 227 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (stating that claimant failed to address various
negligence elements for hospital, nurses, and staff); Doades v. Syed, 94
S.W.3d 664, 671B72 (Tex. App.CSan
Antonio 2002, no pet.) (holding that report failed to identify standard of care
for each of the defendant health care providers).  Identifying the correct standard of care is
essential because the trial court cannot determine whether each doctor breached
his or her duty without specific information about what that particular doctor
should have done.  See Palacios,
46 S.W.3d at 880.  

B.     Analysis








Dr. Miller stated that the accepted standards of
care for the Aassessment, diagnosis, and
treatment of medical conditions similar to those of [Shirley] apply to all
physicians.@ 
Dr. Miller listed the same standard of care, in separate sentences, for
both physicians: that they were required, while caring for Shirley, to obtain a
Aurological@ and Agynecological
consultation@ for the ureteral obstruction
and ovarian mass.  All of the listed
defendants in the case were involved in Shirley=s
diagnosis for her abdominal pain; both Dr. Estorque and Dr. Awan[6]
diagnosed Shirley=s symptoms following her initial
CT scan.  Dr. Awan argues that the report
fails to give an Aindividualized analysis@ of his
conduct; however, based on each party=s
recitation of the facts, Dr. Estorque and Dr. Awan did not appear to have
different roles or duties for the Schafers=
asserted diagnostic and referral issue. 
In their petition, the Schafers are not challenging Dr. Awan=s
subsequent gastroenterological course of treatment; rather, they argue that Dr.
Awan and Dr. Estorque breached the standard of care when both physicians read
the CT scans, failed to disclose the results to Shirley, and then failed to
refer Shirley to specialists in urology and gynecology.








Although Dr. Miller uses the same standard for
both physicians, his report outlines each doctor=s
standard of care separately, identifying each doctor and his standard of care
in the case.  See Romero v. Lieberman,
232 S.W.3d 385, 392 (Tex. App.CDallas
2007, no pet.) (holding same standard of care adequate for all listed medical
doctors involved in treating septicemia condition); In re Stacy K. Boone,
P.A., 223 S.W.3d 398, 405B06 (Tex.
App.CAmarillo
2006, orig. proc.) (holding expert report adequate on standard of care for
multiple defendants where each defendant was in the same type of care and the
standard was the same for each); Cf. Taylor v. Christus Spohn Health
Sys. Corp., 169 S.W.3d 241, 245 (Tex. App.CCorpus
Christi 2004, no pet.) (holding that report failed to address separate
standards of care for varied duties of the defendants, including the hospital,
doctors=
association, emergency room physician, and cardiologist).  Dr. Estorque and Dr. Awan may disagree with
Dr. Miller=s opinions regarding the
standard of care applicable to each of them, but the standards of care are
sufficiently stated to provide both physicians with notice of the conduct at
issue.  See In re Boone, 223
S.W.3d at 406.  Because Dr. Miller
applied the proper standard of care for both physicians=
identical conduct, we must overrule this segment of Dr. Awan=s second
issue.  

VII.   Dr.
Miller=s treatment of the professional
associations

Dr. Estorque argues in his third issue and Dr.
Awan argues in his second issue that the report fails to contain sufficient
criticism or analysis of their respective professional associations, ANorth
Texas Gastroenterology Consultants, P.A.@ and ADr.
Pedro E. Estorque, Jr. M.D., P.A.@ 








A.     Applicable
law








A plaintiff must provide an expert report to each
health care provider against whom he or she has alleged a health care liability
claim, or the claim must be dismissed on the health care provider=s
motion.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b).  Under section 24 of the Professional
Associations Act (Athe Act@), Athe
association (but not the individual members, officers or directors) shall be
jointly and severally liable with the officer or employee furnishing
professional services for such professional errors, omissions, negligence,
incompetence, or malfeasance on the part of such officer or employee when such
officer or employee is in the course of his employment for the association.@  Tex. Rev. Civ. Stat. Ann., art. 1528f, ' 24
(Vernon 2003); Obstetrical and Gynecological Assocs., P.A. v. McCoy, 283
S.W.3d 96, 105 (Tex. App.CHouston [14th Dist.] 2009, pet.
filed) (holding that the legal consequences to a professional association are
based solely on the doctors= conduct,
making the need for a separate expert report unnecessary) (citing Carl J.
Battaglia, M.D., P.A. v. Alexander, 177 S.W.3d 893, 902B03 (Tex.
2005)).  Under the Act, the negligence of
a professional association=s
employee is imputed to the association; thus if an expert report is sufficient
as to specific claims against the doctor, then the report is sufficient as to
the same claims against the professional association.  See Ctr. for Neurological Disorders, P.A.
v. George, 261 S.W.3d 285, 295 (Tex. App.CFort
Worth 2008, pet. denied).  Further, the
Texas Supreme Court recently stated in Gardner v. U.S. Imaging, Inc.
that A[w]hen a
party=s
alleged health care liability is purely vicarious, a report that adequately
implicates the actions of that party=s agents
or employees is sufficient.@  274 S.W.3d 669, 671B72 (Tex.
2008).

B.     Analysis








It is undisputed that Dr. Estorque and Dr. Awan
were acting in the course and scope of their employment at their respective
professional associations when they initially examined Shirley=s
symptoms in March 2006.  See Tex.
Rev. Civ. Stat. Ann., art. 1528f, ' 24; Battaglia,
177 S.W.3d at 901-02 (explaining that A[n]either
the pleadings nor the evidence furnished any basis for drawing distinctions
between the physicians and their respective professional associations@).  The Schafers have not alleged any theories of
negligence distinct from the negligence of the two physicians; no direct acts
by the professional associations as separate entities have been identified or
challenged.[7]  See McCoy, 283 S.W.3d at 106 (holding
that when liability is based solely on the actions of a professional
associations= principals and not the
entities, no expert report is required). 
The expert report and the petition do not specifically allege that the
Schafers are suing the professional associations on the legal principle of
vicarious liability; however, the documents clearly identify only the
physicians= conduct as constituting
negligence.  See Univ. of Tex. Sw.
Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex. App.CDallas
2006, no pet.) (concluding that plaintiffs need not mention hospital in expert
report when plaintiffs limited their claim against hospital to vicarious
liability for acts of employees).  Thus,
we conclude and hold that the Schafers did not need to file an expert report
specifically addressing the professional associations that were only implicated
by the actions of the two physicians.  McCoy,
283 S.W.3d at 106. 

Because the professional associations=
liability was based solely on the acts of its physicians, we overrule Dr.
Estorque=s third
issue and Dr. Awan=s second issue pertaining to
this argument.

VIII.   Conclusion








Because Dr. Miller=s report
insufficiently describes the causal link between  Dr. Estorque=s and
Dr. Awan=s
breaches and the Schafers= injury and thus fails to
provide the trial court with sufficient information to determine that the
Schafers= claims
have merit, we must sustain Dr. Estorque=s and
Dr. Awan=s issues
with regard to the inadequacy of Dr. Miller=s expert
report on the causation element.  We note
that the Shafers raised only claims of vicarious liability against the
professional associations.  We therefore
reverse the trial court=s decision denying Appellants= motions
to dismiss and remand this case to the trial court to consider the issue of
whether to grant the Schafers a thirty-day extension to file an adequate expert
report.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(c); Leland, 257
S.W.3d at 208.

 

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

 

LIVINGSTON, J., dissents
without opinion.

 

DELIVERED:  September 17, 2009











[1]Dr. Awan argues that the
expert report should have separately addressed North Texas Gastroenterology
Consultants, P.A.





[2]Shirley had a kidney
stone in 2003.  At that time, Dr. Estorque
had referred her to Dr. Admire, who performed a left renal shockwave
lithotripsy to treat the kidney stone.





[3]An oophorectomy is also
known as an Aovariectomy,@ which is Athe surgical removal of
an ovary.@  See Dictionary.com,
http://dictionary.classic.reference.com/browse/ovariectomy (last visited Sept.
16, 2009).





[4]See Lewis v. Funderburk, 253 S.W.3d 204, 208
(Tex. 2008) (authorizing appeal from trial court order determining that expert
report was adequate and denying motion to dismiss).





[5]Dr. Miller also stated
that Athese negligent acts and
omissions as stated above, proximately caused [Shirley]=s delayed diagnosis and
treatment of kidney stones, ureteral obstruction, and ovarian masses, as well
as overall worsening of her condition, pain, mental anguish, loss of dignity,
and loss of kidney function.@





[6]Both doctors were working
in the course of their employment in their professional associations, which we
will address in the next section.





[7]The Schafers named the
professional associations in the suit and served both with process; Dr.
Estorque and Dr. Awan were named as registered agents to receive those
citations.